## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| JENNIFER BROWN,<br><br>        Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX INFORMATION SERVICES, LLC, and TRANS UNION LLC,<br><br>        Defendants. | Case No.:<br><br>**COMPLAINT AND**<br>**DEMAND FOR JURY TRIAL**<br><br>1. **FCRA, 15 U.S.C. §1681** *et seq.* |

Plaintiff Jennifer Brown ("Plaintiff"), through her attorneys, alleges the following against Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax"), and Trans Union LLC ("Trans Union"):

### INTRODUCTION

This is a one-count complaint based on violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. §1681e(b), which requires credit reporting agencies to assure maximum possible accuracy of the information they report.

### JURISDICTION AND VENUE

1. The District Court has federal question jurisdiction over these claims

pursuant to 28 U.S.C. § 1331; 15 U.S.C. § 1681.

2. Venue in this District is proper pursuant to 28 U.S.C. 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district

3. Defendant transacts business here; as such, personal jurisdiction is established.

## PARTIES

4. Plaintiff Jennifer Brown is a natural person residing in the city of Riverdale in Clayton County, Georgia.

5. Plaintiff is a ("consumer") as defined by the FCRA, 15 U.S.C. §1681a(c).

6. Defendant Experian is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f)). On information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer report*s, as defined in 15 U.S.C. 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

7. Defendant Equifax is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning

consumers for the purpose of furnishing *consumer reports*, as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax can be served through its agent for service of process, Corporation Service Company, located at 40 Technology Parkway South #300, Norcross, Georgia, 30092.

8. Defendant Trans Union is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f)). Upon information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer report*s, as defined in 15 U.S.C. 1681a(d), to third parties. Trans Union can be served through its agent for service of process, Prentice Hall Corporation, located at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

9. Upon information and belief Defendants disburse consumer reports to third parties under contract for monetary compensation.

10. At all relevant times, Defendants' acted through duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

11. On or about August 12, 2019, Plaintiff filed for a voluntary bankruptcy under Chapter 7 of Title 11 of the Bankruptcy Code, in the United States Bankruptcy

Court for the Northern District of Georgia (Atlanta), case number no. 19-62686-sms.

12. Plaintiff was discharged from her Chapter 7 bankruptcy on or about November 19, 2019.

13. Plaintiff was eager to begin working on improving her credit following her bankruptcy and obtaining her "fresh start".

14. To make sure the post-bankruptcy reporting on her credit reports were accurate, Plaintiff obtained copies of her Experian, Equifax, and Trans Union Credit Reports.

15. Upon review, Plaintiff discovered that Experian was reporting her Auto Trakk, LLC Account (the "Account"), account no. 4XXXX and opened on or about June 6, 2014, with a $10,251 Balance, and a Status of "Voluntarily Surrendered."

16. Experian also reported "Voluntarily Surrendered" from January 2019, before Plaintiff filed for Bankruptcy, through August of 2019 in the Payment History.

17. Experian's reporting of the Account was inaccurate.

18. Experian did not correctly report that the Account had been discharged in bankruptcy and has a zero balance, despite reporting the bankruptcy discharge in the public records section and reporting other pre-bankruptcy accounts as

"discharged through bankruptcy".

19. Experian also reported Plaintiff's Telecom Self-Reported Account (the "Telecom Account I") (original creditor Verizon), No. E90F6CXXXXXXXXX as an open account with a $200 Balance.

20. The original Verizon Account, Account No. 6256396240**** was opened in or around November of 2018, and the Telecom Account I was listed in Plaintiff's Chapter 7 Bankruptcy Petition.

21. Experian's reporting of the Telecom Account I was inaccurate.

22. Experian did not correctly report that the Telecom Account I had been discharged in bankruptcy and has a zero balance, despite reporting the bankruptcy discharge in the public records section and reporting other pre-bankruptcy accounts as "discharged through bankruptcy".

23. Experian also reported Plaintiff's Telecom Self-Reported Account (the Telecom Account II") (original creditor CHKG/Metro PCS) Account No. 47014AXXXXXXXXX as an Open account with a $46 balance.

24. Upon information and belief, the Original Creditor, Metro PCS Account was opened prior to Plaintiff filing for bankruptcy.

25. The Telecom Account II was listed in Plaintiff's Chapter 7 Bankruptcy Petition.

26. Experian's reporting of the Telecom Account II was inaccurate.

27. Experian did not correctly report that the Telecom Account II had been discharged in bankruptcy and has a zero balance, despite reporting the bankruptcy discharge in the public records section and reporting other pre-bankruptcy accounts as "discharged through bankruptcy".

28. Experian also reported Plaintiff's Utility Self-Reported Account (the "Utility Account") (original creditor CHKG/Georgia Power) Account No. CF6CBAXXXXXXXXXX as an Open account with a $301 balance.

29. Upon information and belief, the Original Creditor, Georgia Power Account was opened prior to Plaintiff filing for bankruptcy.

30. Upon information and belief, the Utility Account was listed in Plaintiff's Chapter 7 Bankruptcy Petition.

31. Experian's reporting of the Utility Account was inaccurate.

32. Experian did not correctly report that the Utility Account had been discharged in bankruptcy and has a zero balance, despite reporting the bankruptcy discharge in the public records section and reporting other pre-bankruptcy accounts as "discharged through bankruptcy".

33. Plaintiff discovered that Equifax was also reporting the Account with a Reported Balance of $10,251, an Account Status of "Not More Than Two

Payments Past Due", a Scheduled Monthly Payment of $410, and a 40% Debt-to-Credit Ratio.

34.     Equifax's reporting of the Account was inaccurate.

35.     Equifax did not correctly report that the Account had been discharged in bankruptcy and has a zero balance, despite reporting the bankruptcy filing in the public records section and reporting other pre-bankruptcy accounts as "discharged through bankruptcy".

36.     Equifax reported Plaintiff's Chapter 7 bankruptcy with a Date Filed of "August 12, 2019," but failed to report Plaintiff's bankruptcy as discharged in the "Public Records" section of Plaintiff's credit report despite reporting all other Plaintiff's bankruptcy debts as "discharged in bankruptcy".

37.     Equifax failed to accurately update Plaintiff's public records reporting section as "Chapter 7 Discharged" after reporting her Chapter 7 as "Filed."

38.     Equifax correctly reported the Telecom Account I (Verizon) as discharged in bankruptcy establishing Equifax knew or should have known that Plaintiff received a bankruptcy discharge.

39.     Plaintiff discovered that Trans Union was also reporting the Account with a Balance of $10,251, a Pay Status of "Voluntary Surrender", and a Scheduled Monthly Payment of $410.

40. Trans Union also reported Remarks of "RVN" in the Account History from May 2018 through August of 2019.

41. Upon information and belief, RVN means "returned voluntarily."

42. Trans Union's reporting of the Account was inaccurate.

43. Trans Union did not correctly report that the Account had been discharged in bankruptcy and has a zero balance, despite reporting the bankruptcy discharge in the public records section and reporting other pre-bankruptcy accounts as "discharged through bankruptcy".

44. Plaintiff discovered that Trans Union was also reporting her Credit Collection Service Account (the "Credit Account") (original creditor Infinity Select Insurance Company), account no. 8274****, as having an $84 balance, and a Pay Status of "In Collection".

45. Upon information and belief, the Credit Account was opened prior to Plaintiff filing for bankruptcy.

46. Trans Union's reporting of the Credit Account was inaccurate.

47. Upon information and belief, Defendants' proactively sought out and paid for Plaintiff's Public Record bankruptcy information in order to post it to her credit report. The CRA's have been conducting such inquiries via third party vendors for many years and search daily for all U.S. consumer bankruptcy filings and

discharges with the purpose of reporting them to consumers' credit reports.

48. Defendant Equifax does not maintain reasonable procedures to ensure that it accurately reports a bankruptcy as discharged after it has reported a bankruptcy as being filed.

49. Defendants do not maintain reasonable procedures to ensure that pre-bankruptcy debts definitively report after discharge that the debts were either paid or discharged in bankruptcy and do not continue to report payment history or balances as still owed after the bankruptcy was discharged.

50. Defendants Experian and Trans Union received notice that accounts such as the aforementioned accounts should report as discharged in bankruptcy because Defendants were reporting the bankruptcy as filed after the accounts were opened and then reported the Chapter 7 as discharged.

51. Defendant Equifax received notice that accounts such as the aforementioned accounts should report as discharged in bankruptcy because Equifax reported at least four (4) of Plaintiff's accounts which were opened before the bankruptcy filing, as "discharged."

52. Further, Defendants have been sued many times for similar conduct and is aware that when it receives notice of a Chapter 7 bankruptcy discharge or accounts that have been discharged that all pre-bankruptcy installment loans or revolving

accounts are automatically assumed to have been discharged through the consumer's bankruptcy; known as the "default rule".

53. Defendants also received notice of its inadequate post-bankruptcy reporting procedures through the thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints filed against it for its inaccurate reporting following a Chapter 7 discharge.

54. Upon information and belief, Defendants had notice of the aforementioned creditors unreliable procedures for properly updating the reporting of pre-Chapter 7 debt upon discharge of a bankruptcy.

55. Defendants are reporting that Plaintiff owes debt that she does not actually owe, thereby damaging her credit scores and credit worthiness.

56. As a result of Defendants conduct, Plaintiff has sustained actual damages including but not limited to, embarrassment, anguish, and emotional and mental pain.

57. Defendants' reporting is particularly aggravating of Plaintiff's damages because Defendants' inaccurate reporting damages Plaintiff's credit, which she is attempting to rebuild after bankruptcy.

58. The inaccurate reporting by Defendants' caused Plaintiff stress and anxiety about her credit reputation and a belief that she may still owe the debt.

59. Upon information and belief, Plaintiff applied for and was denied auto loans with Nissan Union City, LLC, Defender Security, Security Finance, Synchrony Bank, Merchants Credit Bureau, and Home Partners of America due to the inaccurate information Defendants' published to these creditors in their review of Plaintiff's credit report.

## COUNT I

### Violations of the FCRA, 15 U.S.C. § 1681e(b)

60. Plaintiff incorporates by reference paragraphs one (1) through (59) fifty-nine of this Complaint as though fully stated herein.

61. Defendants report consumer information about Plaintiff through the sale of consumer reports (credit reports).

62. Defendant's credit reports generally contain the following information: (i) <u>Header/Identifying Information</u>: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) <u>Tradeline Information</u>: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) <u>Public Record Information</u>: this section typically includes public record information, such as bankruptcy filings; and (iv) <u>Credit Inquiries</u>: this section lists every entity that has accessed the consumer's file through a "hard

inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

63. Defendants gain access to consumer information from various sources, including furnishers who provide consumer information to Defendants, and information Defendants independently procure.

64. The information reported by Defendants affects to consumer creditworthiness, including their FICO Scores, which are calculated using information contained in Defendants' consumer credit reports.

65. Defendants obtained and reported Plaintiff's consumer bankruptcy information in the Public Records section of Plaintiff's credit report.

66. The diligence Defendants exercises in recording consumer bankruptcy filings is not replicated in Defendant's reporting of the effect of the bankruptcy on the consumers' accounts/tradelines.

67. The FCRA requires that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

68. Defendants violated 15 U.S.C. §1681e(b) by failing to establish and/or to

follow reasonable procedures to assure maximum possible accuracy in the preparation of the Plaintiff's credit reports and credit files it published and maintained concerning the Plaintiff.

69. For instance, Defendants continue to report balances or past due amounts for accounts that Defendant knows are discharged or least dischargeable in bankruptcy, and for which there remains no liability or balance owed by Plaintiff.

70. Defendants are well aware that the effect of a discharge Order in a no asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

71. Rather than following reasonable procedures to assure maximum possible accuracy, Defendants report information regarding pre-bankruptcy debts furnished by the consumers' creditors, even if that information ignores or contradicts information already known by Defendants, or contained in a reasonably accessible public court record that Defendant has obtained or could easily obtain.

72. For accounts included in Plaintiff's Chapter 7 Bankruptcy, Defendants are generally required to report the status of these debts as included in or discharged through bankruptcy, unless the furnishers provide information showing that a debt was excludable from discharge.

73. Defendants negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of consumer information pertaining to discharged debts.

74. Consequently, Defendants routinely report inaccurate, incomplete, outdated, and materially misleading information about Plaintiff, without verifying the accuracy of this information, or updating this information as required by § 1681(e)(b) when Defendants possesses information inconsistent with the reported information, and possesses information establishing that the reported information is in fact inaccurate.

75. Defendants knew or should have known of their obligations under the FCRA, especially pertaining to discharged debts. These obligations are well established by the plain language of the FCRA, in promulgations of the Federal Trade Commission, well-established case law, and in prior cases involving Defendants from which Defendants were on notice of its unreasonable procedures.

76. Defendants have obtained or has available substantial written materials that apprised Defendants of duties and obligations mandated by the FCRA, including where consumers file for Chapter 7 Bankruptcy.

77. Despite knowledge of these legal obligations, Defendants acted willfully in consciously breaching known duties and deprived Plaintiff of her rights under the

FCRA.

78. Defendants also violate 15 U.S.C. § 1681e(b) to the extent Defendants permit furnishers to report tradelines that are demonstrably inaccurate and outdated on the face of the Plaintiff's consumer disclosure. Defendants allow furnishers to report the status of debts arising prior to the date of a consumer's bankruptcy as possessing a balance or past due, and omits information that the account was included in bankruptcy, even though Defendants know these debts arose prior to the date of Plaintiff's bankruptcy and were discharged.

79. Defendants possesses information from which Defendants should know the reported information is inaccurate, as Defendants includes the date the consumer filed bankruptcy, whether the consumer obtained a bankruptcy discharge, as well as the date the inaccurate tradeline account/debt arose or was otherwise opened by the consumer.

80. Defendants' inaccurate and reporting damaged Plaintiff's creditworthiness.

81. Defendants are a direct and proximate cause, as well as a substantial factor in causing actual damages and harm to Plaintiff.

82. As a result of the above-described violations of § 1681e(b), Plaintiff has sustained damages including the loss of credit opportunities, emotional distress, humiliation, and mental anguish.

83. The violations by the credit reporting agencies were willful, rendering the Defendants individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the credit reporting agencies were negligent, which entitles the Plaintiff to recovery under 15 U.S.C. §1681o.

84. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from each in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Jennifer Brown respectfully requests judgment be entered against Defendants for the following:

A. Declaratory judgment that Defendant violated the FCRA;

B. Actual damages pursuant to 15 U.S.C. § 1681n(a)(1) or § 1681o(a)(1);

C. Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1);

D. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

E. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

F. Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

G. Any other relief that this Court deems appropriate.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

Respectfully submitted this 6th day of November 2020,

By: *s/Jenna Dakroub*
Jenna Dakroub
Bar Number: 385021
**Price Law Group**
8425 N. 85th Way
Scottsdale, AZ 85258
E: jenna@pricelawgroup.com
Telephone: (818) 600-5513
Fax: (818) 600-5413
*Attorneys for Plaintiff*
*Jennifer Brown*